UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>AQUA 388 COMMUNITY ASSOCIATION et al.,<br><br>    Defendants. | Case No. 2:23-cv-02498-SB-JPR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 32] |

    Plaintiff United States of America brought this case on behalf of condominium resident Emma Adams against Defendants, a condominium association, two condominium management companies, and two individual condominium staff members, for failing to provide Adams with an accessible parking spot.  After numerous requests to Defendants for an assigned space in which she could park her handicap accessible van, Adams complained to the Department of Housing and Urban Development (HUD), which determined reasonable cause existed to find a violation of the Fair Housing Act (FHA) and issued a discrimination charge.  Plaintiff now moves this Court to enter partial summary judgment that Defendants are liable for their failure to provide Adams reasonable accommodation from the date of her initial request until Defendants assigned her an accessible parking spot.  Defendants cross-moved for summary judgment on the grounds that the requested accommodation was not reasonable because it would have required them to violate other laws.  The Court held a hearing on the motions on October 6, 2023.  Because the undisputed facts demonstrate that Adams's request for an accommodation was reasonable and that the law would not have precluded Defendants from granting it earlier, the Court grants Plaintiff's motion for partial summary judgment on liability.

I.

In late 2016, Adams purchased a one-bedroom condominium in the Aqua 388 tower, part of a condominium complex managed and operated by Defendants. Joint Appendix of Facts (JAF) 10–17, 33, Dkt. No. 32-1.[1]  The parking garage underneath Aqua 388 contains 888 parking spots, most of which are assigned to residents.  JAF 18, 24, 25.  The remaining unassigned spots include 56 guest and visitor spots and 19 accessible parking spots.  JAF 24, 25.  Adams's condominium, which she purchased from a previous individual resident, came with assigned parking spot W-120, a standard, non-handicap-accessible spot located in the middle of a row of other standard, non-accessible spots.  JAF 34–37.  Adams, who is a paraplegic, drives a modified wheelchair-accessible minivan, which she can only enter and exit through a ramp on the passenger side that requires eight feet of clearance.  JAF 1, 3, 6.

On January 3, 2017, Adams asked Defendants to assign her an accessible spot or introduce her to neighbors assigned to spots she might be able to use.  JAF 41–43.  Adams noted that several other parking spots in the garage, even several non-accessible spots, would have allowed her to enter and exit her vehicle, because they were located at the end of an aisle, were wider than a standard space, or were next to a no-parking area.  JAF 41.  Defendant Hawkins, an employee of the building management company, replied that she did not think exchanging a space

---

[1] Unless otherwise indicated, citations to the JAF are to undisputed facts, to the undisputed portions of partially disputed facts, or to the portions of disputed facts that do not appear to be genuinely in dispute based on the stated dispute.  See Dkt. No. 25 at 6 ("If a party disputes a fact in bad faith by offering evidence that does not contradict the proffered fact *or* by failing to provide a specific citation to the supporting evidence, the Court will deem the fact undisputed for purposes of the motion.").

To the extent the Court relies on evidence to which an evidentiary objection was raised, the Court overrules the objection, having found the contents of the evidence could be admitted at trial.  See, e.g., Sandoval v. County of San Diego, 985 F.3d 657, 666 (9th Cir. 2021) ("If the contents of a document can be presented in a form that would be admissible at trial . . . the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment.").  To the extent the Court does not rely on evidence objected to by the parties, the objections are overruled as moot.

was an option, but would follow up after checking with her supervisor, Defendant Harrington.  JAF 44.  No one followed up with Adams after this request.  JAF 45.  Adams sent an email to Defendant Hawkins, asking if there was "anyway [she could] secure a handicap spot on any floor."  JAF 46.  Defendant Hawkins responded that there was no "open space available for handicap parking space."  JAF 47.  The same day, Adams submitted a form titled "Application for Architectural Modification," requesting access to a "handicap parking spot with enough space for accessible van (access aisle 96" wide)."  JAF 49.  Three days later, Harrington replied that "the Association does not assign handicap parking spaces to individual owners.  All handicap spaces are on a first come, first serve basis."  JAF 50.  Harrington offered to program Adams's garage remote so that it functioned on all three garage levels, enabling her to look for more first-come, first-served parking.  JAF 50.

In mid-February, Adams personally met with Harrington and Assistant General Manager Verona.  JAF 51.  She again requested an accessible spot or asked to switch with a visitor or staff spot.  JAF 52–53.  Harrington again told her it was not possible.  JAF 54.  Three months later, in May 2017, Adams sent a letter to the condominium association board of directors and attended the board meeting.  JAF 70–71.  The board did not respond to her request at the meeting.  JAF 72.  Defendants' counsel sent Adams a letter one week later, stating there "does not appear to be any nexus between the accommodation you have requested and your disability."  JAF 74.  Almost a year later, the condominium association adopted new rules, requiring vehicles parked in unassigned accessible spaces to move every three days.  JAF 77–78.  After receiving several citations, Adams requested that the 3-day rule be waived for her.  JAF 85.  Harrington forwarded the request to Defendant Aqua Corp., but Adams never received a response.  JAF 86–87.  Adams sent another email in June 2018 requesting a "permanent accessible parking spot that has minimum of 8ft clearance."  JAF 88.  Harrington stated that he would place the request on the next agenda for Defendant Aqua Maintenance Corporation.  JAF 89.  Eventually, years after Adams moved in, Defendants assigned Adams accessible parking space 153.  JAF 91–92.[2]

---

[2] The parties dispute the exact timing of this assignment.  Plaintiff states that the spot was not assigned until February 13, 2020.  JAF 91.  Defendants state that the decision to assign her 153 was communicated in April 2019 but that months of

Before Adams was assigned an accessible space, she would circle the parking garage looking for an available, unassigned accessible spot. JAF 58. Cycling through all three garage levels required her to exit the garage onto Long Beach streets and re-enter a different level of the garage through a separate entrance. JAF 59. This process took Adams at least 30 minutes approximately four times a week, and in extreme cases up to three hours. JAF 60. Occasionally, Adams would eat dinner in her minivan because she could not find a space. JAF 61. On days with events in downtown Long Beach, Adams would not leave her condominium for fear that she would not find parking, which led to her cancelling classes she taught as a college professor. JAF 68.

In March of 2018, a year after Adams moved in and after several of her requests had been denied, Adams filed a complaint with HUD. Compl. ¶ 43, Dkt. No. 1. As required by 42 U.S.C. § 3610, the HUD Secretary investigated and eventually issued a § 3610(g)(2)(A) charge of discrimination in September 2022. *Id.* ¶ 45. Defendants elected to resolve the claims in a civil action in this Court under § 3612(a) rather than by an administrative law judge. *Id.* ¶ 46. The Attorney General then commenced this action, as required by § 3612(o). *Id.* ¶ 48. In April 2023, the United States brought an FHA discrimination claim for failing to reasonably accommodate a disability under 42 U.S.C. § 3604(f)(2)(A) and 3604(f)(3)(B). *Id.* ¶ 3.

Plaintiff now moves for partial summary judgment on liability from January 3, 2017 (the date of Adams' first request for reasonable accommodation) until February 13, 2020 (the date Plaintiff identifies as when parking spot 153 was assigned to Adams). Dkt. No. 32 at 3. Defendant cross-moves. *Id.* at 5, 46.

II.

Summary judgment is appropriate where the record, taken in the light most favorable to the opposing party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "The evidence of the non-movant is to be believed, and all justifiable

---

communication over how to mark the space ensued. *Id.* Both parties agree that space 153 was assigned to Adams at some point during this period. JAF 92.

inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The moving party has the initial burden of establishing that there are no disputed material facts. *Id.* at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court "may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Arguments based on conjecture or unfounded belief do not raise a genuine issue of material fact. Moreover, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *R.W. Beck & Assocs. v. City of Sitka*, 27 F.3d 1475, 1481 n.4 (9th Cir. 1994) (citing *Anderson*, 477 U.S. at 249).

III.

The FHA prohibits discrimination on the basis of disability. 42 U.S.C. § 3604(f)(2). The Act categorizes the failure to make reasonable accommodations as a form of discrimination in § 3604(f)(3)(B). Subsection (f)(3)(B) states that discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." The Ninth Circuit treats claims for violations of this subsection as having five distinct elements:

> (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

*Dubois v. Association of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1178–79 (9th Cir. 2006).

### A.

Here, the first, second, and fifth elements are questions of fact upon which the parties agree. JAF 1 (undisputed that Plaintiff has paraplegia); JAF 38–40, 46, 49, 51, 70–71, 88 (undisputed that Plaintiff requested accommodations); JAF 45, 47, 50, 54, 74, 86–87 (undisputed that Defendants denied those requests).

The third element—necessity—is also satisfied based on the undisputed facts. Whether an accommodation is necessary has two components: causation and equal opportunity. *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155 (9th Cir. 2003). A necessary accommodation must have a "causal link" between the disability and the requested accommodation, *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1191 (9th Cir. 2021), such that the lack of the accommodation would deprive the disabled person of the equal opportunity to use and enjoy the dwelling space, *Giebeler*, 343 F.3d at 1155. The use and enjoyment of a parking space can affect a resident's use and enjoyment of a dwelling space. *See, e.g.*, *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1381 (9th Cir. 1997) ("In these cases causation is clear—without a parking space close to the apartment, the handicapped individual's use and enjoyment of the dwelling is diminished."); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 335 (2d Cir. 1995) ("[T]he use and enjoyment of a parking space cannot be considered in isolation from the tenant's ability to use and enjoy her dwelling place, a right specifically protected by the FHA[].").

The facts establishing necessity in this case are undisputed. Adams could not get into or out of her vehicle in her originally assigned non-accessible parking space, and she did not have an assigned accessible parking space until Defendants assigned her space 153. *See* JAF 37, 58–60. The lack of assigned accessible parking, which regularly caused her to spend long periods searching for parking, eat dinner in her car, and cancel classes on event days, was indisputably a "but for" cause of her inability to use and enjoy her condominium on the same terms as all other residents who had assigned parking. JAF 58–69. Thus, the accommodation was necessary, and the third element of a failure to provide reasonable accommodation is met.

B.

This leaves only the fourth element: whether the accommodation was reasonable. A plaintiff bears the burden to show that the requested accommodation is reasonable. See *Giebeler*, 343 F.3d at 1156–57. In *Giebeler*, the Ninth Circuit considered two potential standards for the initial burden of proving reasonableness under the FHA: a plaintiff meets the burden either by producing evidence that a reasonable accommodation was possible or by showing that the accommodation seems "reasonable on its face, i.e., ordinarily or in the run of cases." *Id*. The court did not determine whether the two formulations of the burden were materially different, nor did it settle on one of them, because the burden was satisfied in that case under both. *Id*. If the plaintiff meets the initial burden, the burden then shifts to the defendant to show that the accommodation was not reasonable or would cause undue hardship. *Id*.

1.

Here, Plaintiff has met the initial burden of demonstrating that the requested accommodation was reasonable under both articulations of the burden.

First, the accommodation was certainly possible given that Defendants eventually provided it by assigning Adams parking spot 153. There is no evidence that Defendants were any less able to provide the requested parking spot prior to that date. Moreover, Adams suggested alternative accommodations that would not have required the assignment of an accessible spot. She identified non-accessible spots that would accommodate her needs, because they were located at the end of an aisle, next to a no-parking area, or wider than standard, and she offered to exchange spots or otherwise make informal arrangements with other residents. JAF 41–43, 53. She submitted parking lot maps and photographs with measurements demonstrating that these spots could have provided the necessary clearance for her to enter and exit her vehicle in her wheelchair. Adams Decl., Ex. P, Dkt. No. 32-3 (maps); Ross-Perry Decl., Ex. F, Dkt. No. 32-5 (photographs and measurements).

Second, the requested accommodation was reasonable on its face and in the run of cases. Plaintiff cited numerous examples where courts have found the assignment of an accessible parking spot to be a reasonable accommodation. *See, e.g., Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urb. Dev.*, 620 F.3d 62,

68 (1st Cir. 2010) (disabled condominium residents request for assigned handicap parking spot was reasonable); *Green v. Mercy Hous., Inc.*, 851 F. App'x 16, 18 (9th Cir. 2021) (reversing grant of summary judgment for housing provider because provider had not shown assignment of parking space was unreasonable); *Shapiro*, 51 F.3d at 336 (upholding grant of preliminary injunction based on lower court's determination that assignment of parking spot would have been reasonable accommodation); *S. Cal. Hous. Rts. Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1067 (C.D. Cal. 2005) (collecting cases).

The burden thus shifts to Defendants to show that the requested accommodation was not reasonable or would cause undue hardship.

2.

Defendants contend that Adams's requested accommodations were not reasonable for several reasons.[3]

a.

First, they argue that granting the accommodation would violate federal and state accessibility standards. Joint Brief at 40, Dkt. No. 32. By assigning Adams one of the 19 accessible spaces (as they eventually did), Defendants argue they would have violated federal and state standards for the provision of accessible parking. Defendants likewise argue that granting the accommodation would violate the conditions of the building approval the condominium development received from the California Coastal Commission, as recorded in each condominium unit's deed restrictions. Joint Brief at 40–41.

In support of this argument, Defendants submit several documents,[4] none of which precludes the accommodation that Defendants ultimately provided to

---

[3] Defendants cite no FHA caselaw in their opposition—and no caselaw at all other than a handful of citations relating to the APA and the summary judgment standard.

[4] The documents include excerpts from: the 1998 FHA Design Manual, Abraham Decl. Ex. 1, Dkt. No. 32-6[4]; the final Fair Housing Accessibility Guidelines in the Federal Register, Ex. 3; the California Building Code, Ex. 5; California Coastal

Adams. The strictest standards in the cited documents require accessible parking for 2% of covered units and 5% of visitor parking, and one guest parking spot for every six units. Ex. 3 at 4; Ex. 5 at 1; Ex. 9 at 2. Defendants' condominium contains 556 residential units. JAF 144. The parking garage contains 888 spaces for residential use. JAF 145. Of these, 56 spaces are available for visitors and guests, and 19 spaces are accessible. JAF 147–48. The deed restrictions mandated by the California Coastal Commission require that "[p]arking for handicapped residents shall be provided within the 888-space residence parking supply" and that "[t]he remainder of the 888 parking spaces [not assigned to residents] shall be managed as a common pool of shared parking for . . . residents in need of more than the maximum one or two parking spaces." Ex. 12 at 4. The deed for Adams's unit states that it is subject to the above restriction. Ex. 17 at 4.

Defendants have failed to establish that anything in the submitted documents would have prevented them from assigning an accessible parking spot to Adams. Defendants argue that the Coastal Commission's requirements, as recorded in the deed restriction, prevents them from assigning any unassigned spaces. But that is not what the deed restriction says. Under the parking management plan, the developer was required to provide "1,008 on-site parking spaces in a three-level parking garage," 120 of which had to be set aside for the general public—leaving 888 parking spaces for the residents and guests of the development. Ex. 12 at 4. Of the 888 parking spaces, the developer was to assign one or two spaces to the residents (depending on the size of their unit), and "[t]he remainder of the 888 parking spaces . . . shall be managed as a common pool of shared parking" for residents and guests. Ex. 12 at 4. Nothing in the parking management plan precludes the assignment of an accessible parking space from a previously unassigned space. The plan merely distinguishes between assigned and unassigned spaces according to the specified allocation described above; it does not say that an unassigned space may never be assigned (or vice versa).[5]

---

Commission's Staff Reports, Exs. 6, 10, 14, 31; Long Beach City Council Ordinances Exs. 7–9; deed restrictions, Exs. 11, 12, 17; and CC&Rs, Exs. 29, 30.

[5] Assigning Adams an additional space violates the deed restriction's one-space maximum per one-bedroom resident. Ex. 12 at 4. But Adams did not request two parking spaces—she offered to exchange or transfer her previous one. JAF 40–42. Thus, her request cannot be deemed unreasonable on this ground.

Nor do the remaining documents support the defense position. On the contrary, the standards set forth therein appear to contradict the position that accessible spaces must be unassigned. The FHA Design Manual states that "*reserved* parking spaces" must be provided to disabled residents who request them. Ex. 1 at 5 (emphasis added). The ANSI guidelines contemplate "designated accessible parking . . . on request of residents with handicaps." Ex. 3 at 6. And the California Building Code states that "designated accessible parking . . . shall be provided" to requesting residents with physical disabilities. Ex. 5 at 1. This applies regardless of whether parking is first-come, first-served or assigned. *See* Ex. 1 at 5 (discussing buildings with first-come, first-served parking); Ex. 5 at 1 (discussing buildings with assigned parking).

The Code of Federal Regulations is also at odds with the defense position. The Code provides the following hypothetical example in the section defining the failure to reasonably accommodate:

> Progress Gardens is a 300 unit apartment complex with 450 parking spaces which are available to tenants and guests of Progress Gardens on a first come first served basis. John applies for housing in Progress Gardens. John is mobility impaired . . . and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment. It is a violation of § 100.204 for the owner or manager of Progress Gardens to refuse to make this accommodation. . . . The accommodation is reasonable because it is feasible and practical under the circumstances.

24 C.F.R. § 100.204.

An accommodation in the example described above is no less reasonable when a condominium association has both assigned and unassigned parking spots. *See Astralis*, 620 F.3d at 68 (applying the example to a parking lot with assigned non-accessible spots and unassigned accessible spots). Nor does an accommodation become unreasonable merely because it requires the landlord to modify an otherwise neutrally applied rule, *Giebeler*, 343 F.3d at 1150, alter their own practices or policies, *id*. at 1149, reassign visitor spaces as accessible spaces, *Green*, 851 F. App'x at 18, or inconvenience other residents, *see Shapiro*, 51 F.3d at 336 (courts need not analyze issue of whether tenants would be inconvenienced where parking spaces are available for assignment). And contrary to Defendants'

10

argument that assignment of an unassigned space would cause an unacceptably low number of unassigned spaces, at least one appellate court has held that the number of parking spots remaining after assignment is irrelevant to the FHA analysis because the FHA is concerned only with the disabled individual's rights to reasonable accommodation. *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996).

Defendants' argument also fails to account for the fact that Adams suggested an accommodation that did not require that she be assigned a designated accessible parking spot. She alternatively asked to exchange spots with other residents, which the deed restriction clearly contemplates, or to be assigned a different spot at the end of an aisle or on the side of the garage. Defendants responded that ascertaining who owns each spot would require a prohibitively expensive title search because Defendants do not keep records, JAF 32, even though the deed restrictions require them to do so, Ex. 12 at 4. Defendants do not provide evidence of the cost, nor do they explain why they could not have assisted Adams through informal or other means to locate a resident willing to make an exchange.[6] The solution suggested by Adams appears reasonable, as it would have allowed her to enter and exit her van without requiring Defendants to assign a previously available accessible parking spot, and it plainly would not have violated any of the standards cited by Defendants.

In any event, even if the cited state and local standards prohibited the assignment of an accessible space to Adams (and they do not appear to do so), the FHA would still have required Defendants to provide it based on the undisputed facts of this case. Subsection 3615 states: "[A]ny law of a State, a political subdivision, or other jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid." 42 U.S.C. § 3615; *see also Astralis*, 620 F.3d at 69 (rejecting

---

[6] At the hearing, Defendants acknowledged that the condominium association is required to know the identity of each resident assigned to each parking space and that the association maintains a list containing that information. The failure to explore Adams's alternative accommodation request appears to provide another basis for finding in favor of the government on the FHA claim. Defendants have failed to meaningfully respond to this alternative basis, which the Court construes as being unopposed.

condominium association's argument that providing a parking spot to a disabled resident would cause it to violate local laws). *Astralis* is analogous to this case. In *Astralis*, a disabled condominium resident possessed an assigned, non-accessible parking space, but requested exclusive use of one of the previously unassigned accessible parking spaces. 620 F.3d at 69. The association argued that it could not provide the space, because doing so would cause it to violate Puerto Rico's condominium law. *Id*. The First Circuit upheld the administrative law judge's award for the plaintiff, reasoning that the association was "duty bound not to enforce a statutory provision if doing so would either cause or perpetrate unlawful discrimination" and award the parking spot, "regardless of local law." *Id*. ("To say that private agreements under a state's condominium statute are capable of trumping federal anti-discrimination law verges on the ridiculous."). Here, if *not* providing Adams her requested accommodation would constitute statutorily defined discrimination (and it would), then any state law, local law, or private agreement that would prevent defendants from providing it is invalidated by § 3615.

b.

Defendants next argue that their compliance with certain building requirements grants them safe harbor from liability under the FHA. Joint Brief at 15–16, 40, 45. This argument is based on a misreading of the statute.

The FHA does provide safe harbor for developers who comply with certain requirements—but it is a safe harbor from claims for failure to design and construct buildings in an accessible manner, not from reasonable accommodation claims. Section 3604(f)(3) addresses three types of discrimination under the FHA: (1) a refusal to permit reasonable premise modifications at the expense of the handicapped person; (2) a refusal to make reasonable accommodations; and (3) a failure to design and construct certain dwellings to allow for access by handicapped persons. 42 U.S.C. § 3604(f)(3)(A)–(C). The safe harbor provisions, by their express terms, only apply to the third type of discrimination when developers comply with specified standards. *Id*. at § 3604(f)(4)–(6). Here, Plaintiff is suing for the failure to provide a reasonable accommodation under § 3604(f)(3)(B), and Defendants have not shown that the safe harbor arguments apply to that claim.

12

c.

Finally, Defendants raise several other arguments that warrant only brief discussion. They contend that imposing liability for not granting the accommodation would violate the Administrative Procedures Act (APA), Joint Brief at 41–43, that assigning Adams a parking spot would create a "tragedy of the commons" creating an eventual shortfall of accessible spaces, and that accommodating Adams might constitute a "taking" under the Fifth Amendment. Joint Brief at 43–45.

The APA argument is meritless. Plaintiff is not seeking to enforce a newly created administrative rule that requires proper notice and comment; she is suing to enforce a Congressionally enacted statute that requires reasonable accommodation, i.e., 42 U.S.C. § 3604(f)(3)(B).

The "tragedy of the commons" argument is also meritless. Defendants worry that accommodating Adams will result in all remaining parking spaces being assigned at the request of other residents who want similar treatment. The Ninth Circuit has rejected a similar argument. See *Giebeler*, 343 F.3d at 1154–55 (rejecting the defendant's argument that an accommodation for one could result in a wave of unsustainable accommodations for all, because "such adjustments are ordinarily not reasonable accommodations, and therefore are required only in unusual circumstances"); accord *Shapiro*, 51 F.3d at 336 (holding it "premature" to analyze effect of accommodation on other residents where parking spaces were available for assignment).

The Takings Clause argument presented by Defendants is actually no argument at all. In a footnote, Defendants merely raise a question about whether the assignment of a parking space to Adams might constitute a "taking" under the Fifth Amendment. Joint Brief at 44 n.14 ("Giving rise to the question of whether Plaintiff's actions might constitute a taking in violation of the Fifth Amendment if done without compensation."). Because Defendants have not developed an argument in support of their question, or even seriously framed the issue, the Court will not address it further. See *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("[T]his argument has not been developed, and we decline to address it."); *United States v. Kimble*, 107 F.3d 712, 715 (9th Cir. 1997) "([B]ecause this argument was not coherently developed in his briefs on appeal, we deem it to have been abandoned").

13

IV.

The undisputed facts show that Adams's requested accommodations were reasonable, and none of the other elements of the FHA claim is contested. The Court therefore grants the government's motion for partial summary judgment on liability for failure to reasonably accommodate Adams's requests from the time of her first reasonable accommodation request on January 3, 2017, to the time of the assignment of parking space 153. Since the exact date of the assignment is disputed, *see* JAF 91, the Court leaves the determination of the exact date for resolution at trial. Defendants' cross-motion for summary judgment is denied.


Date: October 6, 2023

                                                      Stanley Blumenfeld, Jr.
                                                     United States District Judge